# In the United States Court of Federal Claims

No. 23-37C

(Filed: April 25, 2023)

**NOT FOR PUBLICATION**

|  |  |
|---|---|
| **PETER EUGENE CRAMER**, | ) ) ) |
| *Plaintiff*, | ) ) |
| v. | ) ) |
| **THE UNITED STATES**, | ) ) ) |
| *Defendant.* | ) ) ) |

*Peter Eugene Cramer*, Helena, OK, *pro se*.

*Yariv S. Pierce*, Civil Division, United States Department of Justice, Washington, D.C., for Defendant.

**OPINION AND ORDER**

***SOLOMSON*, Judge**.

On January 9, 2023, Plaintiff, Peter Eugene Cramer, a prisoner at the James Crabtree Correctional Center in Helena, Oklahoma, proceeding *pro se*, filed a complaint against Defendant, the United States, in this Court. ECF No. 1. That same day, Plaintiff filed an incomplete motion to proceed *in forma pauperis* ("IFP"). ECF No. 2. Accordingly, the Court denied his IFP motion on January 12, 2023. ECF No. 6. The Court also stayed the case while it reviewed Plaintiff's complaint for probable lack of jurisdiction. *Id.*; *see* Rule 12(h)(3) of the Rules of the United States Court of Federal Claims ("RCFC").[1]

---

[1] In the absence of subject-matter jurisdiction, the Court "must dismiss the action." RCFC 12(h)(3). This may be done "at any time by the parties or by the court *sua sponte*." *Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004). A court "may and should raise the question of its jurisdiction *sua sponte*" where jurisdiction is in doubt. *Miller v. United States*, 67 Fed. Cl. 195, 198 (2005).

1

Plaintiff filed an amended complaint on March 6, 2023, ECF No. 10 ("Am. Compl."), and filed a revised IFP motion on March 9, 2023, ECF No. 11.  On March 16, 2023, the Court granted Plaintiff's revised IFP motion and extended the stay of the case while it continued its jurisdictional review.  ECF No. 12.

The amended complaint alleges that Plaintiff is a member of the Ponca Tribe of Indians, which entered into a treaty with the United States in 1858.  Am. Compl. at 1–2 (citing Treaty with the Ponca, U.S.-Ponca, March 12, 1858, 12 Stat. 997 ("Ponca Treaty")).[2] According to Plaintiff, the Ponca Treaty "guaranteed he would not be subject to state criminal law."  *Id.* at 2.  But contrary to this alleged "guarantee," Plaintiff was convicted of first-degree murder by an Oklahoma state court and sentenced to life in prison with the possibility of parole.  *Id.* at 1–2.  Plaintiff claims that his prosecution, conviction, and "wrongful detention and incarceration" by the "Oklahoma authorities" violates the Ponca Treaty.  *Id.* at 1–2, 4.

To support this theory, Plaintiff argues that the Ponca Treaty is "essentially a contract between two sovereign nations."  Am. Compl. at 3 (quoting *Washington v. Washington State Com. Passenger Fishing Vessel Ass'n*, 443 U.S. 658, 675 (1979)).  Plaintiff claims that the United States' "fail[ure] to protect" Plaintiff from "Oklahoma state criminal law" breached this "contract," which in turn "requires the payment of money."  *Id.* at 1–3 (citing various federal and state cases).

Plaintiff alleges that as a result of his "wrongful detention and incarceration," he has "suffered loss of liberty, loss of income, alienation of the affection of loved ones, and deprivations associated with his incarceration, e.g. inability to vote."  Am. Compl. at 2.  Plaintiff seeks:  (1) compensatory damages in the amount of $100 per day; (2) $300,000 for loss of income and alienation of affections; and (3) $1 million in punitive damages for the "ongoing violation of the treaty despite clearly established law to the contrary."  *Id.* at 4.  Plaintiff also seeks a litany of other forms of relief, including a writ of mandamus, appointment of counsel, certification of class status, reimbursement of costs, and attorney's fees.  *Id.*

Plaintiff is proceeding *pro se*, and this Court generally holds a *pro se* plaintiff's pleadings to "less stringent standards."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  The Court, however, "may not . . . take a liberal view of [a] jurisdictional requirement and set a different rule for *pro se* litigants only."  *Kelley v. Sec'y of Dep't of Labor*, 812 F.2d 1378, 1380 (Fed. Cir. 1987).  In other words, even a *pro se* plaintiff "bears the burden of proving that the Court of Federal Claims possesse[s] jurisdiction over his complaint."  *Sanders v. United States*, 252 F.3d 1329, 1333 (Fed. Cir. 2001); *see also Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("No plaintiff, pro se or otherwise,

---

[2] In evaluating Plaintiff's complaint for jurisdictional purposes, the Court assumes that the facts alleged in Plaintiff's complaint are true.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

2

may be excused from the burden of meeting the court's jurisdictional requirements."). In the absence of subject-matter jurisdiction, the Court "must dismiss the action." RCFC 12(h)(3); *see also Kissi v. United States*, 493 F. App'x 57, 58 (2012) ("If the Court of Federal Claims determines that it lacks subject matter jurisdiction, it must dismiss the claim." (citing RCFC 12(h)(3))).

Generally, "[t]he jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." *RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) (citing 28 U.S.C. § 1491(a)(1)). The Tucker Act provides this Court with jurisdiction to decide "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004). The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Rather, "a plaintiff must [also] identify a separate source of substantive law that creates the right to money damages." *Id.* (citing *United States v. Mitchell*, 463 U.S. 206, 216 (1983); *United States v. Testan*, 424 U.S. 392, 398 (1976)). Moreover, "[n]ot every claim invoking the Constitution, a federal statute, or a regulation is cognizable under the Tucker Act." *Mitchell*, 463 U.S. at 216. With respect to "money-mandating" claims, the plaintiff must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009, 178 Ct. Cl. 599 (Ct. Cl. 1967).

For the reasons explained below, the Court dismisses Plaintiff's complaint, *sua sponte*, for lack of subject-matter jurisdiction pursuant to RCFC 12(h)(3). *See Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004) ("Subject-matter jurisdiction may be challenged at any time by the parties or by the court *sua sponte*." (citing *Fanning, Phillips & Molnar v. West*, 160 F.3d 717, 720 (Fed. Cir. 1998))).[3]

---

[3] While the Court has liberally construed Plaintiff's complaint, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), the Court only addresses the claims it could reasonably construe. *See Demes v. United States*, 52 Fed. Cl. 365, 369 (2002) ("While a court should be receptive to *pro se* plaintiffs and assist them, justice is ill-served when a jurist crosses the line from finder of fact to advocate."); *see also Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) ("The leniency granted to pro se petitioners . . . is not boundless. *Pro se* plaintiffs are treated to less stringent standards, but 'they are not automatically entitled to take every case to trial.' Traditionally the 'leniency standard' has still required basic pleading standards. Arguably, hanging the legal hat on the correct peg is such a standard, and '[l]iberal construction does not require a court to conjure allegations on a litigant's behalf.'" (second alteration in original) (quoting, respectively, *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996), *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), and *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001))).

*First*, even if the Court accepts Plaintiff's argument that the Ponca Treaty is "essentially a contract" with the United States, it is not money mandating. Am. Compl. at 3 (citing *Washington*, 443 U.S. at 675). The Tucker Act only grants the Court of Federal Claims jurisdiction "to render judgment . . . upon any express or implied contract with the United States" that is money mandating. 28 U.S.C. § 1491(a). While the Court of Federal Claims "may at times adjudicate Indian treaties," the treaty still must mandate "compensation by the Federal government." *Double Lion Uchet Express Trust v. United States*, 149 Fed. Cl. 415, 421–422 n.8, (2020) (citing *Holmes v. United States*, 657 F.3d 1303, 1309 (Fed. Cir. 2011)). Plaintiff has not identified a single provision of the Ponca Treaty that is money mandating, and after thoroughly reviewing the instrument, the Court is unable to locate any money mandating provision.

*Second*, to the extent that Plaintiff challenges his prosecution and conviction pursuant to Oklahoma state law, his complaint challenges actions taken by the *state of Oklahoma*, not the United States. *See* Compl. at 1–2. This Court only possesses jurisdiction over claims against the United States. *See RadioShack Corp.*, 566 F.3d at 1360 (explaining that the Tucker Act gives the Court authority to render judgment on certain monetary claims against the United States." (citing 28 U.S.C. § 1491(a)(1))). To the extent that Plaintiff challenges actions taken by the state of Oklahoma, this Court lacks jurisdiction over those claims. *See United States v. Sherwood*, 312 U.S. 584, 588 (1941) ("[T]he Court of [Federal] Claims' . . . jurisdiction is confined to the rendition of money judgments in suits brought for that relief against the United States, and if the relief sought is against others than the United States[,] the suit as to them must be ignored as beyond the jurisdiction of the court." (citations omitted)).

*Third*, this Court lacks jurisdiction over Plaintiff's claims "sounding in tort." 28 U.S.C. § 1491(a)(1); *see Rick's Mushroom Serv., Inc. v. United States*, 521 F.3d 1338, 1343 (Fed. Cir. 2008) ("The plain language of the Tucker Act excludes from the Court of Federal Claims jurisdiction claims sounding in tort."). Plaintiff's requests for compensatory damages, "loss of income" damages, and "alienation of affection" damages all "sound[] in tort." 28 U.S.C. § 1491(a)(1); *see Rogers v. United States,* 66 F. App'x 195, 197 (Fed. Cir. 2003) (affirming dismissal for lack of subject-matter jurisdiction where the plaintiff sought compensatory damages, because the Tucker Act precludes claims for "tort damages"); *Crane v. United States*, 664 F. App'x 929, 930 (Fed. Cir. 2016) (affirming dismissal for lack of subject-matter jurisdiction where the plaintiff sought loss of income damages, because this form of relief is reserved for tort claims); *Coleman v. United States*, 635 F. App'x 875, 876 (2015) (per curiam) (affirming dismissal for lack of subject-matter jurisdiction when the plaintiff sought damages stemming from "alienation of affection"). Accordingly, the Court lacks jurisdiction over these claims.

*Fourth*, this Court does not have jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1346, as he argues. *See* Am. Compl. at 1. Contrary to Plaintiff's assertion, "[n]o provision of [28 U.S.C. §] 1346 authorizes a claim against the [g]overnment for money damages [in a manner] relevant to" Plaintiff's complaint. *Doe v. United States*,

4

74 Fed. Cl. 794, 797 (2006); *see id.* at 797–798 (analyzing 28 U.S.C. § 1346, which defines the jurisdiction of the United States district courts).

*Fifth*, to the extent that Plaintiff requests his release from the Oklahoma Department of Corrections, the Court "does not have jurisdiction to provide such a remedy." *Bobka v. United States*, 133 Fed. Cl. 405, 412 (2017); *see Jones v. United States*, 440 F. App'x 916, 918 (Fed. Cir. 2011) (noting that the Court of Federal Claims "has no jurisdiction over criminal matters generally" (citing 28 U.S.C. § 1491)). Nor does this Court possess general injunctive relief powers. *See Moore v. United States*, 94 Fed. Cl. 456, 463 (2010) (holding that "[t]his Court lacks the authority to grant declaratory and/or injunctive relief absent a specific and express statute of Congress"), *aff'd*, 419 F. App'x 1001 (Fed. Cir. 2011).

*Sixth*, Plaintiff's request for class certification is deficient. Plaintiff merely alleges that there are "others similarly situated in Oklahoma Department of Corrections custody," including "Native Americans and other persons, who are enrolled citizens and descendants of citizens of federally recognized Native American tribes." Am. Compl. at 1–2. As Plaintiff is proceeding "*pro se* and does not have legal training," Plaintiff "does not satisfy the adequacy requirement" for class certification. *Moore v. United States*, 163 Fed. Cl. 591, 594 (2022) (referring to RCFC 23(a)(4), which requires that "the representative parties . . . fairly and adequately protect the interests of the class"). Moreover, pursuant to RCFC 83.1(a)(3), a *pro se* litigant may only represent "oneself or a member of one's immediate family" before this court. RCFC 83.1(a)(3).

*Seventh*, Plaintiff does not make the requisite showing to receive the appointment of counsel. To support his request for the appointment of counsel, Plaintiff cites 25 U.S.C. § 175, which, in turn, provides that "[i]n all States and Territories where there are reservations or allotted Indians the United States District Attorney [United States Attorney] shall represent them in all suits at law and in equity." 25 U.S.C. § 175. Courts have "unanimous[ly]" found that the "duty of representation contained therein is discretionary, not mandatory." *Robinson v. New Jersey Mercer County Vicinage-Family Div.*, 514 F. App'x 146, 151 (3rd Cir. 2013) (citing cases from the United States Court of Appeals for the Ninth Circuit and the United States Court of Appeals for the Tenth Circuit); *see also Greene v. United States*, No. 22-1064, 2022 WL 17547204, at *1 (Fed. Cl. Dec. 9, 2022) (collecting cases); *Hernandez v. United States*, 96 Fed. Cl. 195, 205 (2010) (collecting cases). Moreover, the "discretionary duty of [25 U.S.C.] § 175" does not "override the general test for appointment of counsel under the [IFP] statute, 28 U.S.C. § 1915(e)(1)." *Robinson*, 514 F. App'x at 151.[4]

---

[4] The Court further notes that 25 U.S.C. § 175 is not actionable pursuant to the Tucker Act and, in any event, Plaintiff does not explain how the United States Department of Justice possibly could represent both a plaintiff and the government in the same case.

As Plaintiff is proceeding IFP, his request for counsel is governed by 28 U.S.C. § 1915(e)(1), which provides that the "court may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The United States Court of Appeals for the Federal Circuit has emphasized that the Court of Federal Claims' "power to appoint counsel in civil cases is limited," noting that the constitutional right to counsel only applies in cases that "involve the potential deprivation of a liberty interest." *Wright v. United States*, 701 F. App'x 967, 971 (Fed. Cir. 2017) (per curiam) (citing *Pitts v. Shinseki*, 700 F.3d 1279, 1283 (Fed. Cir. 2012)). This Court, however, cannot alter Plaintiff's criminal sentence; in other words, "his criminal sentence — including its length — would not be affected" by any proper claims. *Moore*, 163 Fed. Cl. at 594. As such, "his physical liberty is not at risk of being further deprived if he loses, and the presumption to the right to appointed counsel does not apply." *Id.* This case does not require or warrant the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1).

Finally, Plaintiff alleges that the Ponca Treaty guaranteed his protection from "child custody laws," but he provides no additional support for this allegation or why that putative guarantee entitles him to money damages from the United States. Am. Compl. at 1–4; *see Moore*, 163 Fed. Cl. at 593 n.1 (explaining that because the plaintiff mentioned child custody laws "but [did] not provide additional details or related allegations," "the court [did] not address these laws in its analysis"). Even if Plaintiff had provided some factual allegations, this Court does not have jurisdiction over child custody disputes. *See Stewart v. United States*, No. 17-1145C, 2017 WL 4111337, at *2 (Fed. Cl. Sept. 18, 2017) (explaining that "child custody disputes . . . are not within the jurisdiction of the Court of Federal Claims because they do not seek money damages from the United States").

For the reasons explained above, the Court hereby **DISMISSES** Plaintiff's complaint for lack of subject-matter jurisdiction pursuant to RCFC 12(h)(3). The Clerk of the Court is directed to enter **JUDGMENT** for the government.

**IT IS SO ORDERED**.

s/Matthew H. Solomson
Matthew H. Solomson
Judge
